UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 MISC 00053

-------------------------------------------------------X

In re ex parte Petition of Shagang Shipping
Co., Ltd..

Case No. 14-misc-

-------------------------------------------------------X

## DECLARATION OF JULIAN ANDRE DAVIES IN SUPPORT OF MOTION UNDER 28 U.S.C. SECTION § 1782

I, JULIAN ANDRE DAVIES, pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

1. I am an individual of sound mind and body, and have never been convicted of a crime of moral turpitude.

2. I am a qualified English Solicitor and am a partner of Holman Fenwick Willan LLP, which has a principal place of business at: Friary Court, 65 Crutched Friars, London EC3N 2AE, United Kingdom. I submit this Declaration in support of Petitioner's application, pursuant to 28 U.S.C. § 1782, to obtain documents from entities located in New York, that are required for ongoing proceeding before the High Court of Justice, Queen's Bench Division, Commercial Court, in England ("English Court").

3. The information contained in this Declaration is true and accurate to the best of my knowledge and belief.

Chalos & Co ref: 2333.001

4. On or about August 6, 2008, SHAGANG as (disponent) Owners of the M/V DONG-A ASTREA ("the Vessel"), entered into a time charter party with GRAND CHINA SHIPPING (HGK) CO., LTD. ("GCS" or "charterers"), as charterer, whereby SHAGANG was to supply the Vessel to GCS for a minimum of eighty two (82) months and maximum of eighty six (86) months.

5. In consideration of SHAGANG's execution of the charter party, HNA GROUP CO. LTD. ("HNA") executed a written performance guarantee, also dated August 6, 2008. *A copy of this performance guarantee is attached hereto as Exhibit 1.* As a performance guarantor, HNA was also a joint and several principal obligor under the parties' charter party agreement. Further, HNA expressly warranted: *"In the event that the Charterer fails to perform their obligations under the CP, against your written notice (the "Notice"), we shall take over the position of Charterer under the CP, and perform the CP as Charterer".*

6. On April 20, 2010, the Vessel was delivered to GCS, in accordance with the parties' agreement.

7. Beginning in October 2010, charterers started to regularly fail to make hire payments as required under the charter party. SHAGANG's demands for

payment served on GCS and HNA, went unanswered. In particular, in the second demand letter served upon HNA on 16 December 2010, SHAGANG called on HNA to take over the charter party and perform it as charterers, in accordance with HNA's express obligations under the performance guarantee. HNA declined to accept, and as a result, SHAGANG commenced arbitration under the charter party.

8. The Tribunal issued a First Interim Award against GCS in the amount of USD 5,158,496.89, and a Second Interim Final Award against GSC for USD 2,314,773.21, for the outstanding hire. Following the issuance of these Awards, SHAGANG arrested a vessel in India. Thereafter, GSC satisfied the outstanding Awards.

9. Nevertheless, GCS/HNA subsequently continued to refuse to pay hire and/or to respond to SHAGANG's demands for timely payment of hire in accordance with the charter party. Accordingly, SHAGANG was forced to apply to the arbitral Tribunal for further interim arbitration awards.

10. Specifically, the arbitral Tribunal issued a Third Interim Final Award directing GCS to pay SHAGANG USD 3,965,589 plus interest and costs; a Fourth Interim Final Award ordering GCS to pay USD 3,158,358.90 plus interest and costs to SHAGANG; and a Fifth Interim Final Award in favor of SHAGANG for USD 3,941,198.63, plus interest and costs.

11. Importantly, the Fifth Award also included a declaration by the Tribunal that, as of the date of their assessment of the matter, they considered GCS (HNA) to be in repudiatory breach, such that if SHAGANG accepted their repudiation and terminated the charter party, GCS (HNA) would be liable for any losses incurred by SHAGANG for the balance of the remaining charter period under the charter party.

12. The debt(s) covered by the five (5) interim awards for outstanding and unpaid hire, were eventually settled by GCS/HNA following various enforcement efforts to freeze GCS's bank accounts (by way of a Garnishee Order in Hong Kong), and by way of service of Statutory Demands (which, if not honored is prima facie evidence of the company being insolvent, could result in their company being wound up in Hong Kong). However, it is noteworthy that not only did GCS/HNA fail to honor the terms of the underlying charter party and performance guarantee, they also ignored these five (5) awards until such time that enforcement steps forced them to deal with SHAGANG's claims. In total, HNA/GCS settled over USD 22 million in outstanding hire in this fashion, which for SHAGANG was less than satisfactory for obvious reasons.

13. Under the circumstances, on January 17, 2012, SHAGANG finally accepted GCS's repudiatory breach of the Charter party, thereby bringing

the charter party to an end, and served a notice of termination on GCS and HNA. Shortly thereafter, on March 8, 2012, SHAGANG applied for a 6th and Final Arbitral Award in respect of their damages for the balance of the charter party, which was initially quantified as USD 68,778,513.00 plus interest and costs.

14. On November 1, 2012, the Tribunal issued a Partial Final Award in the amount of USD 58,375,709.52, plus interest and costs in favor of SHAGANG. Subsequently, GCS made an application to appeal the Partial Final Award in the English High Court; however this application was dismissed.

15. SHAGANG has served no less than eighteen (18) demand letters on HNA since September of 2010; including demands for payment of the sum USD 58,375,709.52, as awarded against GCS, which were sent on November 5, 2012, May 14, 2013 and June 11, 2013. HNA have remained silent and ignored SHAGANG's demand letters.

16. In the meantime, SHAGANG served a further Statutory Demand on GCS for the sum due under the Partial Final Award. GCS declined to satisfy the demand and on April 8, 2013, the Hong Kong Court ordered GCS into compulsory liquidation.

17. In accordance with the terms of the performance guarantee, HNA submitted "to the exclusive jurisdiction of the English Courts for the determination of any disputes arising out of or in connection with this Performance Guarantee."

18. As such, on or about September 13, 2012, SHAGANG commenced an action against HNA, in the English Court. SHAGANG has claimed damages of no less than USD 66,356,281.[1] *A copy of SHAGANG's Particulars of Claim is attached hereto at Exhibit 2.*

19. HNA filed its Defense and Counter-claim with the English Court on November 4, 2013, denying that GCS was in repudiatory breach of the charter party and is liable to SHAGANG under the performance guarantee.

20. SHAGANG filed its Reply and Defense to the Counter-claim on November 25, 2013.

21. The English Court proceeding remains ongoing, with witness statements to be exchanged on March 6, 2014 and thereafter expert reports to be

---

[1] This amount is calculated based on the difference between the hire rate under the charter party and the market rate of hire for a charter party for a period of sixty one (61) to sixty five (65) months that remained until the agreed termination of the charter party (*i.e.* – beginning on January 17, 2012 through the agreed termination date of eighty two (82) to eighty six (86) months).

exchanged no later than March 28, 2014. A five-day hearing is set down to commence on February 9, 2015.

22. Despite Petitioners' repeated demands for payment to HNA, it is evident that HNA does not intend to honor its obligations under the performance guarantee.

23. At issue in the English proceeding is the calculation of the accelerated receipt of damages, and specifically what discount rate it to be applied.

24. Based on documents obtained from SHAGANG and publically available information, I understand that HNA maintains relationships with several banks with offices located in New York, and that HNA remits funds through the New York Banks. *Copies of documents evidencing HNA's relationship with and use of these banks is attached as Exhibit 3.*

25. The documents and information enumerated in Exhibit A to the Petition are needed for use in the dispute before the English Court. Specifically, the information and documents sought will, *inter alia*, assist in establishing the credit worthiness of HNA in order to determine the appropriate risk premium to incorporate into the discount rate, used in calculating the accelerated receipt of damages, and the location of assets

belonging to or held by HNA which bear on Petitioner's claims in the English Court proceeding, and the enforcement of same.

26. I understand from SHAGANG's New York counsel that the New York Banks are present within the jurisdiction of this court. Accordingly, the Court is respectfully requested to exercise its discretion to require these entities to produce documents in their possession or in the possession of their corporate affiliates that are within the scope of the request for documents set forth herein.

Pursuant to Section 1746 of Title 28 United States Code, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Shanghai, P.R. China
March 4, 2014

Respectfully submitted,

By: _____
JULIAN ANDRE DAVIES