UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re ex parte Petition of Shagang Shipping Co Ltd        Case No. 14-misc-00053


------------------------------------------------------------X


# DECLARATION OF CHRISTOPHER JAMES GRIEVESON IN OPPOSITION TO MOTION UNDER 28 USC § 1782

I, **CHRISTOPHER JAMES GRIEVESON** pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

1. I am a qualified English Solicitor and am a partner of Wikborg Rein LLP, which has a principal place of business in England at Cheapside House, 138 Cheapside, London EC2V 6HS. I submit this declaration in opposition to the Petitioner's application, pursuant to 28 USC § 1782, to obtain documents from entities located in New York. In particular in this declaration I shall address the factual allegations made in the declaration of Julian Andre Davies dated 7 March 2014 filed in support of the Petitioner's application. I am fully familiar with the facts set forth below based on my own knowledge and my review of the file in this matter.

2. As I will explain in this declaration, the documents requested by Shagang in its subpoenas are not required for or even relevant to the on-going proceedings in the High Court of Justice, Queen's Bench Division, Commercial Court, in England ("the English Court"). I believe that the Petitioner's application is an inappropriate device to obtain asset discovery prior to judgment and should be dismissed in its entirety.

3. The information contained in this declaration is true and accurate to the best of my knowledge and belief.

Factual background

4. As a preliminary point I should make clear that the first my clients knew of these subpoenas and

this Courts' order was when I drew to their attention an article appearing in the shipping industry periodical Tradewinds that these orders had been obtained. I observed that article on 17 March and exhibit a copy of the article as **exhibit 1** to this declaration. I wrote to Mr Davies that day requesting copies of the subpoenas, court order and motion papers (as set out at **exhibit 2**). I have still to receive any response from him. Furthermore, Mr Davies' firm has never asked for any of these categories of document in the English proceedings. I have no comments on paragraphs 4 to 6 of Mr Davies' declaration.

5. As to paragraph 7 of Mr Davies' declaration:

   (1) I agree that in October 2010 GCS fell behind in its payments of hire and that Shagang therefore commenced arbitration against it. That hire was subsequently paid, as Mr Davies accepts in the final sentence of paragraph 8 of his declaration.

   (2) With reference to Shagang's demand letter served upon HNA on 16 December 2010 calling on HNA "*to take over the charter party*", there was a dispute as to the effect of this notice. It was Shagang's position that this had the effect of automatically making HNA party to the charterparty. This was disputed by HNA. That dispute was determined by a London arbitration tribunal on an Award on Jurisdiction dated 18 January 2012, which I exhibit as **exhibit 3** to this declaration. Shagang's allegations were rejected by the arbitration tribunal, and the London arbitration tribunal subsequently ordered Shagang to pay HNA its costs of that reference in the sum of US$33,780.77 and £4,200. To date, Shagang has failed to pay those costs.

   (3) The vessel was operated by GCS until 17 January 2012, on which date Shagang withdraw the vessel.

6. At paragraph 9 of his declaration, Mr Davies wrongly conflates GCS and HNA. HNA was not the charterer under the charterparty and was not therefore obliged to "*pay hire*".

7. At paragraph 10 of his declaration Mr Davies refers to further arbitration awards made against GCS. As he accepts at paragraph 12 of his declaration, all of those sums have since been paid.

8. At paragraph 11 of his declaration Mr Davies refers to a declaration by the Tribunal in their Fifth Award. That declaration was made against GCS and not HNA. It is a well-established principle of English arbitration law that an arbitration award will not bind third parties, even a guarantor, absent special wording in the guarantee. This is, indeed, accepted in Shagang's Reply statement, which I exhibit as **exhibit 4** hereto. At paragraph 2(1) it says: *"The Claimant does not rely on any of the 1st to 6th Awards as evidence of the findings contained therein as against the Defendant…"*. Mr Davies' references to *"GCS (HNA)"* in this paragraph are therefore misleading to this Honourable Court.

9. A similar point can be made in response to paragraphs 13 and 14 of Mr Davies' declaration. Nothing that the Tribunal said in its Sixth Award is legally relevant to the claim against HNA. Again, however, this is contrary to the impression given by Mr Davies' declaration.

10. At paragraph 15 of his declaration Mr Davies refers to a number of demand letters that have been sent to HNA *"since September of 2010"*. Many of those letters related to the hire which Mr Davies himself accepts has now been paid. All the outstanding hire was paid as of March 2012 by GCS.

11. I agree with the summary of the English proceedings given by Mr Davies at paragraphs 17 to 21 of his declaration. For completeness I include a copy of HNA's Defence and Counterclaim as **exhibit 5** to this declaration. I should add HNA does have an additional substantial defence and counterclaim against Shagang's claims, *to wit* that Shagang engaged in bribery to procure the charter party. Shagang is aware of this defence and it will formally be pleaded shortly. Meanwhile the court has scheduled a five-day trial to hear all all claims, defences and counterclaim.

12. I strongly disagree with paragraph 22 of Mr Davies' declaration. HNA's case is that there is no liability under the performance guarantee. HNA will in the English proceedings say that its position is strongly supported by a decision of the English Court of Appeal (which is binding on the English Commercial Court as a matter of precedent) that recently considers what principles should be applied in considering whether there has been a repudiatory breach of a long-term commercial contract. It is not the case that HNA *"does not intend to honor its obligations under the performance guarantee"*.

The Petitioner's application for discovery

13. At paragraphs 23 and 25 of his declaration, Mr Davies asserts that the discovery sought by the Petitioner is relevant to *"assist in establishing the credit worthiness of HNA in order to determine the appropriate risk premium to incorporate into the discount rate, used in calculating the accelerated receipt of damages…"*.

14. This is not correct. A deduction from the principal claim on grounds of accelerated receipt of damages is designed to account for the fact that money paid into the hands of the plaintiff now is more valuable than money that would otherwise have been paid in the future. The credit-worthiness of HNA is irrelevant to that calculation. Were it otherwise, a defaulting party could rely on its own lack of credit-worthiness to reduce the amount of damages payable. Such a proposition is, in my respectful view, obviously wrong and illogical.

15. Indeed, that is Shagang's own positive case in the English proceedings: at paragraph 11(2)(b) of its Reply it says this:

*"…it is denied (if it be alleged) that any discount should be applied in respect of counterparty risk, that being a risk which is in no sense avoided by damages award, given that such an award provides the Claimant only with an accelerated entitlement to payment as opposed to accelerated receipt…"*

16. For completeness I should say that HNA does not contend that its credit-worthiness is relevant to the calculation of the discount for accelerated receipt.

17. Accordingly neither party in the English proceedings contends that the credit-worthiness of HNA is relevant to the calculation of the discount for accelerated receipt. Indeed Shagang's positive case is it is irrelevant and should not be taken into account.

18. Mr Davies also says at paragraph 25 of his declaration that discovery is sought of *"the location of assets belonging to or held by HNA which bear on Petitioner's claims in the English Court proceedings, and the enforcement of the same"*. I am not aware of any issue (and Mr Davies does not identify one) in the English proceedings that would put in issue HNA's credit-worthiness. In my view the real

intention of the Petitioner's application is to seek asset discovery to aid enforcement, and/or to seek asset discovery to aid pre-judgment attachment in other jurisdictions, and/or to put commercial pressure on HNA. This is all notwithstanding that it is yet to have a principal judgment against HNA.

19.  I would therefore respectfully invite the Honourable Court to dismiss the petition.

Pursuant to Section 1746 of Title 28 United States Code, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: London, England

March 21, 2014

Respectfully submitted,

By: _____

CHRISTOPHER JAMES GRIEVESON