# EXHIBIT 5

IN THE HIGH COURT OF JUSTICE                    Claim No 2012 Folio 1208
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

BETWEEN:

SHAGANG SHIPPING CO LTD

Claimant

and

HNA GROUP CO LTD

Defendant

---

DEFENCE AND COUNTERCLAIM

---

1.  In this Defence and Counterclaim:

    (a)  The Defendant adopts the definitions, headings and abbreviations used in the Particulars
         of Claim without thereby making any admission;

    (b)  Save where expressly stated to the contrary, references to paragraph numbers are to those
         of the Particulars of Claim.

## DEFENCE

### The parties

2.  Save that no admissions are made as to the Claimant's trading address (its registered office being
    6/F Hecny Tower, 9 Chatham Road South, Tsim Sha Tsui, Kowloon, Hong Kong), paragraph 1
    is admitted.

3.  Paragraph 2 is admitted.

### The Charterparty

4.  Paragraphs 3 and 4 are admitted.

L_4149279_V1 04 11.13 520315-004

The Performance Guarantee

5.    Paragraph 5 is admitted.


Initial non-performance of the Charterparty

6.    Paragraphs 6 to 8 are admitted.


7.    As to paragraph 9:

   (a)    Paragraph 9(1) is admitted.

   (b)    As to paragraph 9(2):

      i.    It is admitted that the Claimant commenced arbitration proceedings against Charterers. The Defendant was not a party to that arbitration.

      ii.    Save that the 2nd Award was for US$2,314.773.18, the fact of the 1st and 2nd Awards as against Charterers are admitted.

      iii.    It is denied, if it be averred, that the Tribunal's 1st and 2nd Awards are admissible as against the Defendant, because:

         (1)    The Defendant was not party to that arbitration. As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

         (2)    Further, the 1st and 2nd Awards are confidential to the Claimant and Charterers and any attempt by the Claimant to rely on them as against third parties to the arbitration would be a breach of that arbitration confidentiality.

8.    Save that it is denied that the Claimant attempted to put Charterers into liquidation (i.e. commence winding-up proceedings), but admitted that the Claimant served a statutory demand on 11 March 2011, paragraph 10 is admitted. On 23 March 2011 the Charterers paid US$4,000,000 to the Claimant on account of the outstanding indebtedness. On 29 March 2011

the Claimant and Charterers executed a Settlement Agreement whereby the outstanding indebtedness was compromised on the terms more particularly set out therein.

9. Paragraph 11 is admitted.

## Further non-performance of the Charterparty since March 2011

10. Paragraph 12 is admitted, save that on 13 December 2011 Charterers made a payment of US$1,000,000 towards the arrears of hire which fully covered the 24th instalment of hire and partly covered the 25th instalment of hire. The amount outstanding as at 11 January 2012 was therefore US$14,786,394.52. All of the sums due have since been paid pursuant to the terms of a Settlement Agreement made between the Claimant, Charterers, and the Defendant dated 17 May 2012.

11. As to paragraph 13:

   (a) Save that the 3rd Award was for US$3,946,598.63, the fact of the 3rd to 5th Awards as against Charterers are admitted. The sums adjudged due in respect of hire have since been paid in full pursuant to the Settlement Agreement dated 17 May 2012.

   (b) It is denied, if it be averred, that the Tribunal's 3rd to 5th Awards are admissible as against the Defendant, because:

      i. The Defendant was not party to that arbitration. As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

      ii. Further, the 3rd to 5th Awards are confidential to the Claimant and Charterers and any attempt by the Claimant to rely on them as against third parties to the arbitration would be a breach of that arbitration confidentiality.

12. As to paragraph 14:

   (a) As to the contention that Charterers had failed to pay the 24th – 43rd instalments of hire,

paragraph 10 above is repeated.

(b)     Save that the notice was given outside business hours and therefore deemed served on 12 January 2012 ("the 12 January Notice"), the fact of the Claimant's three banking days' notice is admitted.

(c)     It is denied that Charterers were in fact in repudiatory breach of the Charterparty. Charterers did not evince an intention not to be bound by the terms of the Charterparty. To the contrary they had made serious proposals at senior management level to pay monthly instalments of US$1,000,000 towards the arrears and any further hire that may fall due, commencing from December 2011 (which instalment had been paid on 13 December 2011) and a promise to pay cash sums of circa US$4 million prior to 1 February 2012. All of these payments would be in addition to the substantial sums that the Claimant would recover as liened sub-hire/freight.

13.     As to paragraph 15:

(a)     It is admitted that no sums were paid by Charterers or the Defendant between 12 and 17 January 2012 but, as set out above, Charterers had undertaken to pay circa US$4 million prior to 1 February 2012.

(b)     Save that it is admitted that by its notice dated 17 January 2012 the Claimant purported to terminate the Charterparty, paragraph 15(1) is denied. Charterers had not evinced an intention not to be bound by the terms of the Charterparty and were not in repudiatory breach (continuing or otherwise) of the Charterparty.

(c)     Save that it is admitted that by its notice dated 17 January 2012 the Claimant purported to withdraw the Vessel from the Charterparty service, paragraph 15(2) is denied. Three banking days after service of the 12 January Notice was 17 January 2012 and Charterers had until midnight on 17 January 2012 to pay the outstanding hire before the Claimant was entitled to withdraw the Vessel. The purported notice of withdrawal sent at 1508 local time on 17 January 2012 was accordingly premature. In any event, even if (which is denied) the Claimant was entitled to withdraw the Vessel from the Charterparty service, in such circumstances no damages are payable for loss of bargain.

14.  Paragraph 16 is denied.  Charterers were not in repudiatory breach of the Charterparty and the Claimant is not entitled to recover damages.  If and insofar as the Claimant seeks to rely on the Tribunal's Partial Final Award ("the 6th Award") dated 1 November 2012 as evidence to the contrary, it is denied that the 6th Award is admissible in this action, because:

    (a)  The Defendant was not party to that arbitration.  As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

    (b)  Further, the 6th Award is confidential to the Claimant and Charterers and any attempt by the Claimant to rely on it as against third parties to the arbitration would be a breach of that arbitration confidentiality.

15.  Without prejudice to paragraph 14 above, it is denied that the Claimant is entitled to the sum of US$66,356,281 as alleged:

    (a)  The market rate of US$17,500 is admitted.  The alleged commission of 3.75% is not admitted and the Claimant is put to proof of the same.

    (b)  The Claimant is however required to give credit for accelerated receipt in circumstances where the Charterparty would have run to February 2017.  The Defendant will say that the discount rate for accelerated receipt should be assessed by reference to the Claimant's Weighted Average Cost of Capital ("WACC").  Pending disclosure, the best particulars that the Defendant can give of the WACC is 13.62% - 22.64% per annum.

    (c)  Further, the Claimant is required to give credit for the possibility of catastrophic contingencies such as total loss, insolvency, etc.  The Defendant will say that the discount rate for catastrophic contingencies should be 1.5% per annum, following The Kildare [2011] 1 Lloyd's Rep 360 at [73].

    (d)  The Claimant is finally required to give credit for the putative number of days during which the Vessel would have been off-hire.  Pending exchange of expert reports, the best

particulars that the Defendant can give is that it is likely to be estimated at 10 days' off-hire per annum, again following The Kildare, at [54].

(e)   Further, if (which is denied) the 6th Award is relevant, it is to be noted that the Tribunal awarded the Claimant the sum of US$58,375,709.52, substantially less than the sum now claimed.

16.   Save that no demand was made on 23 February 2011, but a demand was made on 16 February 2012 for a sum greater than that now claimed (even allowing for the fact that there was at that time outstanding hire which has since been paid), paragraph 17 is admitted.

**Alleged non-performance of the Guarantee**

17.   Save that it is admitted that a demand was made on 16 February 2012 for a sum greater than that now claimed (even allowing for the fact that there was at that time outstanding hire which has since been paid), paragraph 17 is denied. It is denied that Charterers were in repudiatory breach of the Charterparty. Consequently it is denied that the Defendant is in breach of or liable under the Guarantee as alleged or at all. Further and in any event it is denied that the sum of US$66,356,281 is the true measure of the Claimant's alleged loss.

18.   Paragraph 19 is denied, there being no principal liability on which interest can run. Alternatively, interest can only run on past losses. As set out above, the majority of the Claimant's alleged losses are future losses for which credit must be given for accelerated receipt.

19.   If contrary to the above the Defendant is liable to the Claimant in the sum claimed or any sum under the Guarantee, the Defendant is entitled to and will set off the sums counterclaimed below in reduction and/or extinction of any sums otherwise adjudged due to the Claimant.

**COUNTERCLAIM**

20.   On 16 July 2011, the Claimant purported to commence arbitration proceedings ("the HNA Reference") against the Defendant under the Charterparty (not the Guarantee), on the basis that it had required the Defendant to "take over" from Charterers as charterer under the same. The Claimant appointed Timothy Marshall as its arbitrator under that reference. The Defendant

appointed Simon Latham without prejudice to its contention that the tribunal had no jurisdiction over it as any claim arising out of the Guarantee, including in respect of the Defendant's obligations to "take over" the Charterparty, was subject to the jurisdiction of this Court.

21. In commencing the HNA Reference, the Claimant came under an implied obligation to honour an award made against it by the tribunal in that reference.

22. By Award as to Jurisdiction dated 18 January 2012 ("the Jurisdiction Award"), the tribunal dismissed the Claimant's claim on the basis that it had no jurisdiction over the Defendant. The tribunal further ordered the Claimant to pay the Defendant's recoverable costs of the Jurisdiction Award on the standard basis.

23. By a further Final Award as to the Determination of the Amount of Recoverable Costs dated 15 July 2013 ("the Costs Award"), the tribunal awarded the Defendant its costs of the Jurisdiction Award in the sum of US$31,943.17 and further awarded the Defendant its costs of the Costs Award in the sum of US$1,837.60. The Tribunal also directed that in the event that the Defendant had paid for the costs of the Costs Award in the sum of £4,200, which it had, the Claimant should reimburse it that amount. All of the above sums were to attract interest at the rate of 4% per annum with three monthly rests.

24. Accordingly the Claimant is and was under an implied obligation to pay the Defendant the sum of US$33,780.77 being the Defendant's recoverable costs of the HNA Reference, the sum of £4,200 being reimbursement of the Defendant's payment of the costs of the Costs Award, and interest at the rate of 4% per annum with three monthly rests.

25. In breach of the implied obligation aforesaid, the Claimant has failed and/or refused to pay the said sum of US$33,780.77 and £4,200, or any of it. In the premises the Defendant is entitled to and does claim damages for breach of that implied obligation in the sum of US$33,780.77 and £4,200, alternatively such sum as the Court sees fit.

26. The Defendant is further entitled to and does claim interest at the rate of 4% per annum compounded at three monthly rests pursuant to the terms of the Costs Award, alternative at such rate as the Court sees fit pursuant to section 35A of the Senior Courts Act 1981.

AND the Defendant counterclaims:

(1)   Damages in the sum of US$33,780.77 and £4,200, or such other sum that the Court may assess;

(2)   Interest at the rate of 4% per annum compounded at three monthly rests pursuant to the Costs Award, alternative at such rate as the Court may see fit pursuant to section 35A of the Senior Courts Act 1981

ALEXANDER WRIGHT

<u>Statement of Truth</u>

The Defendant believes that the facts stated in this Defence and Counterclaim are true.

I am duly authorised to sign this statement on behalf of the Defendant.

Signed:        BJW

Full name:    BENJAMIN JOHN WILLIAMS

Position held:   ASSOCIATE SOLICITOR, WIKBORG REIN LLP

Date:      4. 11. 13

FILED this  4th  day of November 2013 by Wikborg Rein LLP, Cheapside House, 138 Cheapside, London EC2V 6HS, Solicitors for the Defendant

<u>Claim No 2012 Folio 1208</u>

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>QUEEN'S BENCH DIVISION</u>
<u>COMMERCIAL COURT</u>

BETWEEN:

SHAGANG SHIPPING CO LTD

<u>Claimant</u>

and

HNA GROUP CO LTD

<u>Defendant</u>

---

DEFENCE AND
COUNTERCLAIM

---

Wikborg Rein LLP
Cheapside House
138 Cheapside
London EC2V 6HS

Tel: 020 7367 0300
Fax: 020 7367 0301

<u>Solicitors for the Defendant</u>

L_4149279_V1 04.11.13 520335-004