UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────X

In re ex parte Petition of Shagang Shipping Co Ltd          Case No. 14-misc-0053

────────────────────────────────────────X

# SUPPLEMENTAL DECLARATION OF CHRISTOPHER JAMES GRIEVESON IN SUPPORT OF MOTION TO VACATE THE DISCOVERY ORDER AND QUASH THE SUBPOENA

I, **CHRISTOPHER JAMES GRIEVESON** pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

1. I am an individual of sound mind and body, and have never been convicted of a crime of moral turpitude. The information contained in this declaration is true and accurate to the best of my knowledge and belief.

2. I am a qualified English Solicitor and am a partner of Wikborg Rein LLP, which has a principal place of business in England at Cheapside House, 138 Cheapside, London EC2V 6HS. I submit this declaration in support of the motion filed by HNA Group Co Ltd ("HNA") to vacate the discovery order and quash the *ex parte subpoenas*, alternatively for a protective order limiting the scope of the *subpoenas*. In particular, in this declaration I will address the factual allegations made by Julian Andre Davies in his supplemental declaration dated 7 April 2014.

3. For the reasons I have set out in my earlier declaration dated 21 March 2014, and as I will further explain in this declaration, these documents are not required for or even relevant to the ongoing proceedings in the High Court of Justice, Queen's Bench Division, Commercial Court, in England ("the English Court"). I believe that the discovery sought by Shagang Shipping Co Ltd ("Shagang") is an inappropriate device to obtain asset discovery prior to judgment and should be dismissed in its entirety.

**The alleged basis for the discovery sought by Shagang**

4.  In his supplementary declaration, Mr Davies asserts that the discovery sought is relevant to the English Court action because evidence as to the credit-worthiness of HNA is required to calculate the discount factor to be applied for the accelerated receipt of damages.

5.  With respect it seems to me that Mr Davies has misunderstood and/or mischaracterised the parties' cases as advanced in the English Court proceedings.

6.  Shagang's case on the accelerated receipt issue is set out in their Reply and Defence to Counterclaim dated 25 November 2013 and verified by a Statement of Truth signed by Trevor Fox, one of Mr Davies' colleagues ("Shagang's Reply"). At paragraph 11(2)(b) of Shagang's Reply, Shagang has formally "*denied (if it be alleged) that any discount should be applied in respect of counterparty risk, that being a risk which is in no sense avoided by damages award, given that such an award provides the Claimant only with an accelerated entitlement to payment as opposed to accelerated receipt…*".

7.  Shagang does not therefore limit itself to saying that "*there is no binding precedent that this risk should be assessed and damages awarded to the non-breaching party discounted accordingly*", as suggested at paragraph 14 of Mr Davies' supplemental declaration. It positively avers that "*counterparty risk*", i.e. the risk represented by GCS' (or for that matter HNA's) default, is legally irrelevant.

8.  As to HNA's pleaded case, at paragraph 7 of his supplemental declaration Mr Davies refers to paragraph 15(c) of HNA's Defence and Counterclaim dated 4 November 2013 ("HNA's Defence"), wherein HNA pleads that "*[Shagang] is required to give credit for the possibility of catastrophic contingencies, such as total loss, insolvency, etc*".

9.  The reference to "*insolvency*" in paragraph 15(c) of HNA's Defence is to the insolvency of Shagang, not of HNA. As I have already explained at paragraphs 15 and 17 of my declaration dated 21 March 2014, it is no part of HNA's case in the English Court action that its own (or GCS') solvency is relevant to the discount factor to be applied for the accelerated receipt of damages. HNA has not advanced any such case because it would be obviously wrong in law: it would mean that a defaulting party could rely on its own lack of credit-worthiness to reduce the amount of damages payable. Allowing the defaulting party to set up its own lack of credit-

worthiness and therefore the risk of its own default to reduce the damages payable to the innocent party would be contrary to the elementary principle of English law which is that an award of damages in contract is intended to put the innocent party into as good a position as if the contract had been performed. The same is true of the reference to "*bankruptcy*" in the decision in *The Kildare* [2010] EWHC 903 (Comm) to which Mr Chopping refers in paragraph 4.1 of his declaration: it relates to the potential bankruptcy of Shagang, not HNA.

10. It is not, then, that I have "*fail[ed] to understand [HNA's] pleaded case*", as Mr Davies somewhat tendentiously suggests at paragraph 13 of his supplemental declaration. Rather, it is Mr Davies who has misconstrued HNA's pleading in order to attempt to shore up Shagang's wholly unjustified application for discovery. Certainly there has been no suggestion in the English Court proceedings themselves that HNA's credit-worthiness is relevant to the matters in issue.

11. Although in my view HNA's pleaded case as set out in HNA's Defence was perfectly clear, the matter was put beyond any shadow of a doubt by a letter that my firm wrote to the Court (copied to Shagang's London solicitors) on 9 April 2014, which I attach as **exhibit 1** hereto. That letter confirmed to the English Court that the submission made in paragraph 15(c) of HNA's Defence was that "*[Shagang] is, as part of the calculation of the discount rate to be applied, required to give credit for the possibility of catastrophic contingencies such as (amongst the other listed items) of* **Shagang** *as the Claimant and not HNA as guarantor or Grand China Shipping ("GCS") as the charterers*". That letter went on to give the explanation I have set out above as to why HNA's or GCS's own insolvency would be irrelevant as a matter of law.

12. As a matter of English civil court procedure it is open to the parties to supplement or clarify (but not to amend) their formal pleadings by letters setting out "Further Information". The provision of Further Information is governed by Part 18 of the English Civil Procedure Rules (**exhibit 2**). Paragraph 2.2(1) of the Practice Direction to Part 18 envisages that that Further Information may be by way of letter, unless made in response to a formal Request for Further Information. Although the focus of Part 18 is on Further Information provided in response to requests for such information (whether by way of formal Requests for Further Informations or in correspondence), in practice it is very common for parties in commercial litigation to provide voluntary Further Information in correspondence. Such voluntary Further Information is then considered to be part of that party's pleaded case.

13. It would not therefore be open for HNA to resile from what is set out in my firm's letter of 9 April 2014, without the express permission of the Court (which HNA will not seek).

14. In those circumstances, HNA's credit-worthiness is irrelevant to the issues in the English Court action <u>as a matter of law</u>. I would respectfully submit that it therefore matters not what may or may not be the case under accounting standards generally (to which Mr Chopping's declaration is directed) because as a matter of English law it is absolutely plain that the defaulting party's credit-worthiness cannot be relevant to the amount of damages that it has to pay. That is not only clear in principle but is (and, on a proper reading of HNA's Defence, has always been) common ground in the English Court proceedings.

15. Aside from HNA's credit-worthiness, no other justification is or could be advanced as to why the discovery sought it said to be relevant to the English Court proceedings. Since HNA's credit-worthiness is in fact also irrelevant, I would respectfully invite the Court to vacate the discovery order and quash the *ex parte subpoenas* on grounds of irrelevancy.

**The other matters raised by Mr Davies**

16. At paragraphs 18 to 46 of his supplemental declaration, Mr Davies makes a number of assertions which are by his own admission irrelevant. Mr Davies asserts that he has done so in order to answer certain points made in my declaration of 21 March 2014, but the Honourable Court will observe that my earlier declaration was itself responding to allegations made in Mr Davies' declaration of 7 March 2014.

17. I think it unfortunate that Mr Davies has dedicated the majority of his declaration to matters which are by his own admission irrelevant to the discovery order in dispute and appear to be intended to simply slurry the name of HNA. I do however feel compelled to respond to them as many of Mr Davies' assertions are unjustified and/or incorrect and call out for correction.

<u>The procurement of the Charterparty by bribery</u>

18. At paragraph 18 of his supplemental declaration, Mr Davies refers to "*unsubstantiated, and very serious, allegations of bribery*". He returns to this issue at paragraphs 40 to 45. *Inter alia* he asserts

that HNA has not pleaded any defence based on bribery (paragraph 43), or provided "*even a shred of evidence to support this allegation*" (paragraph 44), and that Shagang "*will insist on an individual Partner at Wikborg Rein, or HNA's Queen Counsel, signing their name to such an allegation*" (paragraph 42).

19. I can advise the Honourable Court that HNA has now filed a formal application to amend its Defence and Counterclaim to advance a case of bribery against Shagang. I exhibit that application and the documents served in support of it at **exhibit 3** to this declaration. HNA's Amended Defence and Counterclaim has been settled by Queen's Counsel and Junior Counsel both of whom are satisfied that there is credible *prima facie* evidence of fraud. I have signed a witness statement in support of the application to amend in which I too endorse the contents of that Amended Defence and Counterclaim.

20. The nature of the bribery is set out in HNA's Amended Defence and Counterclaim. In light of Mr Davies' protestations, I would invite this Honourable Court to read that pleading in full. As set out therein, it is HNA's case that:

"*(a) In July or early August 2008, [Shagang's] Deputy General Manager Xu Wenzhong, on the instructions of [Shagang's] Managing Director Shen Wenfu, paid the sum of RMB 300,000 to Jia Tingsheng. Jia Tingsheng is the son of Jia Hongxiang. Jia Hongxiang was at all material times the CEO of GCS. At Mr Xu's request, Jia Tingsheng induced his father Jia Hongxiang to approve the Charterparty and he duly gave his direct approval of the Charterparty by e-signature on 6 August 2008 timed at 22:23:16.*

*(b) At or around the same time, Mr Shen procured that [Shagang's] broker, Hong Xiangbin of Howe Robinson, pay the sum of US$30,000 to Sun Che. Mr Sun was at all material times the General Manager of GCS. Mr Sun conducted the negotiations for the Charterparty and gave his approval to the Charterparty by e-signature on 5 August 2008 timed at 18:37:38.*"

21. Those allegations are fully supported by <u>confessions</u> made by Messrs Jia and Jia, Xu, Sun and Shen to the Haikou Public Security Bureau ("the PSB") as confirmed by a formal statement issued by the PSB on 17 February 2014 (**exhibit 4**). Although the statements that I served in September and October 2013 foreshadowed these developments, HNA quite properly refrained from formally alleging bribery until the PSB investigation into these individuals was complete. In light of their confessions HNA has now formally advanced its case on bribery.

22. HNA's case is that the legal consequences of the bribery are that they are entitled to rescind the guarantee for fraudulent non-disclosure and/or Shagang's claim is barred by the principle of *ex turpi causa non oritur actio*.

23. It remains to be seen whether Shagang will contest HNA's bribery case although I find it difficult to see how they will seek to go behind clear confessions by all of the relevant individuals to the PSB. In any case, it is clear that the bribery case is of serious substance, and not, as Mr Davies dismissively characterises it, "*a misguided and inappropriate attempt to disparage Shagang*".

The allegations against HNA in respect of the substantive claim on the Guarantee

24. If HNA is vindicated on its bribery case, then the guarantee has been rescinded for fraudulent non-disclosure and/or is unenforceable on the basis of *ex turpi causa*. Shagang cannot therefore assert that HNA has failed to honour the guarantee, and all of the allegations made by Mr Davies (so far as they relate to HNA) at paragraphs 21 to 38 of his supplemental declaration fall away.

25. Without prejudice to that overarching point, I would address the individual points made by Mr Davies in these paragraphs as follows.

26. As to paragraphs 21 to 24, 29 and 32 of Mr Davies' supplemental declaration, I do not dispute that hire was paid late by GCS and that steps were taken by Shagang to enforce their claims for hire against GCS and HNA. Given however that all of the hire claims were settled by a Settlement Agreement dated 17 May 2012 (as referred to in paragraph 10 of HNA's Defence and admitted at paragraph 4(4) of Shagang's Reply) – i.e. nearly two years ago – I do not understand how any of this is conceivably relevant to the issues now before this Honourable Court.

27. At paragraph 25, Mr Davies says that Shagang commenced arbitration because of alleged delays with service of an English High Court claim form through diplomatic channels. I find this explanation difficult to follow. If the proper forum for the dispute was the English High Court, then I do not understand why delays in service through diplomatic channels would justify the commencement of arbitration. In any case, the correspondence relied upon in Exhibit C to Mr Davies' supplemental declaration is dated November 2011 and the arbitration was commenced on 16 July 2011 (see paragraph 20 of HNA's Defence, admitted in Shagang's Reply).

28. As to paragraph 26, I agree that the London tribunal dismissed Shagang's arbitration claim against HNA on grounds of lack of jurisdiction. As I explained in paragraph 6(2) of my declaration of 21 March 2014, Shagang has failed to honour the tribunal's award of costs against it and in favour of HNA arising out of that reference.

29. At paragraph 27, Mr Davies again fails to distinguish between GCS' obligations under the Charterparty and HNA's obligations under the Guarantee (on the hypothesis that it is valid and enforceable). HNA was not "*obliged to pay hire and perform the charter party*" whether before or after the notification on 16 December 2010. As was found by the London tribunal in its Award on Jurisdiction, that notification did not have the effect of making HNA party to the Charterparty.

30. At paragraph 28, Mr Davies takes issue with the statement I had made in paragraph 8 of my declaration of 21 March 2014 to the effect that paragraph 8 of Mr Davies' declaration of 7 March 2014 was misleading. I maintain that to be the case. Mr Davies had in his declaration of 7 March 2014 asserted that the Tribunal in its Fifth Award "*considered GCS (HNA) to be in repudiatory breach, such that if SHAGANG accepted their repudiation and terminated the charter party, GCS (HNA) would be liable for any losses incurred by SHAGANG…*". In fact, the Tribunal had no jurisdiction over HNA and its Fifth Award said nothing at all about whether HNA was in repudiatory breach or was liable to Shagang.

31. At paragraph 30, Mr Davies says that he "strongly disagrees" with the proposition that there is new law from the English Court of Appeal that supports HNA's case. Mr Davies is wrong. The case in question is *Telford Homes (Creekside) Ltd v Ampurius Nu Homes Holdings Ltd* [2013] EWCA Civ 577. In the recent English High Court decision of *The Bulk Uruguay* [2014] EWHC 885 (Comm), Mr Justice Popplewell accepted that the principles set out in *Telford Homes* applied in considering whether there had been a repudiation of a long-term time charter.

32. As to paragraph 31:

    (1) I maintain that the Sixth Award against GCS, which post-dated the termination of the Charterparty, is legally irrelevant. It cannot be adduced as evidence of the findings contained therein, as Shagang accepts at paragraph 2(1) of its Reply. As it post-dates the termination of the Charterparty, it cannot be relevant to the "*factual background*" either.

(2) As to the first five Awards, I would draw the Honourable Court's attention to what I <u>actually</u> said (as opposed to what Mr Davies imputes to me) in paragraph 9 of my declaration of 21 March 2014, which is that those awards are not binding on HNA. I did not say that they were legally irrelevant and accept that they are arguably relevant as "factual background" to the termination. Mr Davies is here tilting at windmills.

33. At paragraph 34 Mr Davies appears to proceed on the assumption that Shagang was or ought to have been entitled to circumvent the usual process of serving the English Court claim form through diplomatic channels. This is the ordinary route for service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters 1965 ("the Hague Service Convention"), to which both England and China are party. That this is the ordinary route for service is reflected in rules 6.40, 6.42 and 6.43 of the English Civil Procedure Rules (**exhibit 5**). A defendant is not obliged or even expected to allow alternative service on English solicitors to short-circuit this ordinary route.

34. In any case, I do not accept that this process took "*over 10 months*". Mr Davies has failed to provide any evidence of when Shagang actually took steps to serve the Claim Form. It is noteworthy that in a previous English Court action commenced in February 2011, Shagang had taken no steps at all to serve the Claim Form until November 2011 (although it had, as I have described above, purported to commence arbitration in the meantime). Further, I understand that in fact service on defendants resident in China through diplomatic channels usually takes between three and five months, and in some cases as little as two months, so it may well in fact be the case that the delay was principally of Shagang's own making.

35. At paragraphs 35 to 39, Mr Davies purports to set out the procedural history of insolvency proceedings against HNA in Hong Kong. As HNA resists those proceedings both as to jurisdiction and on the merits it is difficult to see how these are relevant. It is moreover completely incorrect to say that HNA "*voluntarily accepted service [of the English Court action]…strategically*" on 15 August 2013 "*so that they could argue in the Hong Kong Courts that they had defences which were subject to the jurisdiction of the English High Court*". The reason why HNA acknowledged service on 15 August 2013 was because, as Mr Davies himself sets out at paragraph 34, it was in late July 2013 that the English Court action was served on HNA through diplomatic channels. English civil procedure rules required HNA to enter an Acknowledgement

of Service within 24 days; hence it was entered on 15 August 2013. This was unrelated to the Hong Kong proceedings.

36. At paragraphs 40 to 45 of his statement, Mr Davies sets out his views on the bribery allegations. I have already addressed these above. It is clear that HNA has now advanced a serious case of bribery as set out in formal pleadings settled by Queen's Counsel and based on confessions made by the relevant individuals to the Haikou PSB. In my respectful view, Shagang's attempt to hide behind a veil of manufactured indignation does it no credit.

**Conclusion**

37. In conclusion, and as to paragraph 46 of Mr Davies' supplemental declaration, I would invite the Court to vacate the discovery order on grounds of irrelevance. It is clear to me that the creditworthiness of HNA is irrelevant to the matters pending before the English Court.

Pursuant to Section 1746 of Title 28 United States Code, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: London, England

April 9, 2014

Respectfully submitted,

By: _____

CHRISTOPHER JAMES GRIEVESON