# Exhibit 3

# Application Notice

- You must complete Parts A and B, and Part C if applicable
- Send any relevant fee and the completed application notice to the court with any draft order, witness statement or other evidence
- It is for you (and not the court) to serve this application notice

| In the | High Court of Justice Queen's Bench Division Commercial Court Royal Courts of Justice |
|---|---|
| Claim No. | 2012 Folio 1208 |
| Claimant(s) (including ref.) | SHAGANG SHIPPING CO LTD<br>Ref: RDB/BAW/36849-109 |
| Defendant(s) | HNA GROUP CO LTD |
| | |
| Date | 8 April 2014 |

**You should provide this information for listing the application**

Time estimate 1 (hours) (mins)

Is this agreed by all parties? Yes No x

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper.

## Part A

1 Where there is more than one claimant or defendant, specify which claimant or defendant

~~(The claimant)~~(The defendant)(1)

2. State clearly what order you are seeking (if there is room) or otherwise refer to a draft order (which must be attached)

intend(s) to apply for an order (a draft of which is attached) that(2)

Pursuant to CPR r.17.1(2)(b), the Defendant do have permission to amend its Defence and Counterclaim in the form of the draft Amended Defence and Counterclaim attached to the fourth witness statement of Christopher James Grieveson.

3. Briefly set out why you are seeking the order Identify any rule or statutory provision

because(3)

The amendments have real prospects of success, it would be just to allow the amendments so that the disputes between the parties can be adjudicated upon, and there is no prejudice to the Claimant that cannot be compensated in costs.

Further reasons are set out in the fourth witness statement of Christopher James Grieveson.

Part B

~~(The claimant)~~(The defendant)[1] wishes to rely on: *tick one:*

the attached (witness statement)~~(affidavit)~~ x (the claimant)(the defendant)'s[1] statement of case

evidence in Part C overleaf in support of this application

| Signed | [signature] | Position or (if signing on behalf of firm, company or corporation) | ASSOCIATE, WIKBORG REIN LLP |
|---|---|---|---|
| | (Applicant)~~('s litigation friend)~~('s solicitor) | | |

1. If you are not already a party to the proceedings, you must you must address for service of documents

Address to which documents about this claim should be sent (including reference if appropriate)[1]

| | | | if applicable |
|---|---|---|---|
| Wikborg Rein LLP | | Tel. no. | 020 7367 0300 |
| Cheapside House, 138 Cheapside | | fax no. | 020 7367 0301 |
| London | | DX no. | |
| Postcode | EC2V 6HS | e-mail | bjw@wrco.co.uk / cjg@wrco.co.uk |

Part C

Claim No. 2012 folio 1208

**(Note: Part C should only be used where it is convenient to enter here the evidence in support of the application, rather than to use witness statements or affidavits)**

(The claimant)(The defendant)[1] wishes to rely on the following evidence in support of this application:

**Statement of Truth**

*The applicant believes that the facts stated in this application notice are true

*I am duly authorised by the applicant to sign this statement

Full name BEN WILLIAMS

Name of Applicant's solicitor

Signed

*(Applicant)('s ~~litigation friend~~)('s solicitor)

**Position or office held** Associate

(if signing on behalf of firm, company or corporation)

*delete as appropriate

**Date** 8 April 2014

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 211 is open from 10am to 4 30 pm Monday to Friday. When corresponding with the court please address forms or letters to the Clerk to the Commercial Court and quote the claim number.

Crown Copyright. Reproduced by Sweet & Maxwell Ltd

Made on behalf of the Defendant
Witness: Christopher James Grieveson
4th
Exhibits: CJG4
Dated 8 April 2014

**IN THE HIGH COURT OF JUSTICE** **Claim No 2012 Folio 1208**

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

BETWEEN:

**SHAGANG SHIPPING CO LTD** **Claimant**

**and**

**HNA GROUP CO LTD** **Defendant**

---

**FOURTH WITNESS STATEMENT OF CHRISTOPHER JAMES GRIEVESON**

---

I, **CHRISTOPHER JAMES GRIEVESON** of Wikborg Rein LLP, Cheapside House, 138 Cheapside, London EC2V 6HS **do say as follows:**

1. I am the same Christopher James Grieveson who has previously given three witness statements in these proceedings. I adopt the same abbreviations and definitions in this statement as in my first three statements. As set out therein, I am a partner in the firm of Wikborg Rein LLP aforesaid and a solicitor qualified in England and Wales with day to day conduct of the above dispute on behalf of HNA. I am duly authorised by HNA to make this statement.

2. The facts and matters set out in this statement are true to the best of my knowledge, information and belief, in accordance with my personal knowledge and involvement in the case, perusal of the papers, and instructions received from HNA.

3. Exhibited to this statement marked "**CJG4**" is a paginated bundle of true copy documents to which I shall refer in this statement. References to this exhibit are in the format "CJG4/page number".

4. I make this statement in support of HNA's application dated 7 April 2014 that it do have permission to amend its Defence and Counterclaim in the form of the draft Amended Defence and Counterclaim which I exhibit at **[CJG4/1-14]**.

5. I will consider the nature of the amendments in further detail below. In summary:

   (1) The amendments advance new allegations that senior Shagang personnel bribed (or procured the bribery of) senior GCS personnel to procure that GCS enter into the Charterparty guaranteed by the HNA Guarantee on which Shagang now sues. As set out in the draft Amended Defence and Counterclaim and below, the relevant personnel at both Shagang and GCS have now confessed to the Haikou Public Security Bureau, Meilan Sub-Bureau ("the PSB") (in effect, the Chinese police) that these bribes were paid and received.

   (2) HNA avers that in those circumstances, it is entitled to and has rescinded the Guarantee for non-disclosure, on the basis that the bribery was an unusual feature surrounding the contractual relationship between GCS and Shagang that ought to have been but was not disclosed. HNA says that the natural inference is that this non-disclosure was fraudulent. HNA also says that the claim is barred by the maxim of *ex turpi causa non oritur actio*.

6. The draft Amended Defence and Counterclaim has been settled by Leading and Junior Counsel and is verified by a Statement of Truth signed by Wu Lie, HNA's General Manager of Audit and Legal Affairs Department.

**The existing dispute**

7. The compass of this action as it currently stands is set out in the Case Memorandum. In summary:

   (1) This claim is made against HNA under the Guarantee dated 6 August 2008 pursuant to which it guaranteed GCS' obligations to Shagang under the Charterparty between GCS and Shagang dated 6 August 2008.

(2) It is Shagang's case that GCS's (admitted) failure to pay hire amounted to a breach of condition, entitling Shagang to terminate the Charterparty as it did on 17 January 2012, and claim damages against GCS and hence against HNA under the Guarantee. Alternatively Shagang contends that GCS was in repudiatory breach of the Charterparty, with like consequences. Shagang's claim is for US$66,356,281.

(3) HNA denies that the prompt payment of hire was a condition of the Charterparty and further denies that GCS was in repudiatory breach of the Charterparty. HNA further avers that termination on the alleged grounds of breach of condition was premature in that Shagang did not allow three banking days' notice to elapse from when its anti-technicality notice was deemed received on 12 January 2012, the Claimant instead purporting to terminate at 1508 on 17 January 2012. This is disputed by Shagang which says that the notice was deemed received on 11 January 2012.

(4) As to quantum, it is agreed that subject to liability Shagang is entitled to damages calculated by reference to the difference between the Charterparty rate of US$52,500 and the agreed market rate of US$17,500 over the balance of the unexpired term of the Charterparty. There are disputes over the amount of credit that must be given for accelerated receipt, the possibility of catastrophic contingencies, and putative off hire days.

8. Procedurally, the hearing of the action has been set down for the five days 9 - 12 and 16 February 2015. The parties have exchanged disclosure and witness statements, although there are outstanding specific disclosure requests in relation to Shagang's financial position (which HNA says is relevant to the proper discount rate for accelerated receipt). HNA has on 2 April 2014 served an expert report from a chartering broker on off-hire days and any responsive report from Shagang is due to be served by 25 April 2014. Forensic accounting reports on the question of accelerated receipt are due to be exchanged on 23 May 2014.

## The bribery of GCS personnel by Shagang personnel

9. As I explained in my first witness statement, in June 2013 HNA made a formal complaint to the Haikou PSB following the discovery of serious irregularities in certain expense and disbursement vouchers that had been submitted by Mr Yang Tao and Ms Chen Yuxia, who were respectively the former Chief Financial Officer and the Deputy General Finance Manager at GCS. On 10 June 2013 the Haikou PSB opened a file against Mr Yang and Ms Chen "*to…investigate the bribery*

*case of the non state functionary Mr Yang Tao and Ms Chen Yuxia, the management team of Grand China Shipping Co Ltd (for receiving bribes from Best Wealthy Limited, Shagang Shipping Company etc)*'. On 30 August 2013, formal detention warrants were issued for Mr Yang and Ms Chen.

10. The investigation into Mr Yang and Ms Chen instigated a wider investigation by HNA and the PSB into potentially improper conduct by senior GCS management vis-à-vis Shagang. Two individuals who came under investigation were Sun Che and Jia Hongxiang. Mr Sun and Mr Jia were respectively the General Manager and CEO of GCS at the time that the Charterparty was concluded. Both were directly involved in approving the Charterparty and Mr Sun was also directly involved in its negotiation.

11. By a letter dated 17 February 2014 **[CJG4/15-18]**, the Haikou PSB informed HNA that:

(1) In October 2013, Mr Jia and his son Jia Tingsheng confessed that in July or early August 2008 Shagang's Deputy General Manager Xu Wenzhong had, on the instructions of Shagang's Managing Director Shen Wenfu, paid Jia Tingsheng a bribe in the sum of RMB 300,000 to induce his father to approve the Charterparty, which he duly did.

(2) In December 2013, Mr Xu confessed to the PSB that he had indeed paid a bribe of RMB 300,000 to Jia Tingsheng in order to induce his father to approve the Charterparty. Mr Xu informed the PSB that he had been instructed to do so by Shen Wenfu.

(3) On 13 January 2014, the PSB remanded Mr Sun in custody on suspicion of the acceptance of bribes from Shagang in connection with the negotiation and conclusion of the Charterparty. Mr Sun confessed to the PSB that he had accepted a bribe in the sum of US$30,000 from Shagang's broker, Hong Xiangbin of Howe Robinson.

(4) On 15 February 2014, Shen Wenfu confessed to the PSB that he had instructed Mr Xu to bribe Jia Tingsheng and Jia Hongxiang by the payment of RMB 300,000, and further that he had instructed Hong Xiangbin of Howe Robinson to bribe Mr Sun, in order to conclude the Charterparty.

12. Accordingly, both the makers and recipients of the relevant bribes have confessed their part in the bribery to the Haikou PSB. As I have already explained, Mr Sun and Mr Jia held senior

positions within GCS and were directly involved in negotiating and approving the Charterparty.

## The draft Amended Defence and Counterclaim

13. The amendments to the draft Amended Defence and Counterclaim arise out of the bribery I have described above and what HNA says are the legal consequences thereof.

14. At paragraphs 4A and 4B, the draft Amended Defence and Counterclaim sets out the facts of the bribery which I have described above and HNA's reliance on the Haikou PSB investigation.

15. As set out at paragraphs 5A and 19A to 19D, it is HNA's case that the bribes were unusual features of or surrounding the contractual relationship between Shagang and GCS that ought to have disclosed to HNA prior to its execution of the Guarantee, that the fact that the Charterparty was procured by bribery was material to the Guarantee, and that the non disclosure of the bribery induced HNA to enter into the Guarantee. HNA says that given the inherently dishonest nature of the bribery the natural inference is that the non-disclosure was fraudulent. In those circumstances, HNA avers that it is entitled to and does rescind the Guarantee.

16. Further or in the alternative, and as set out at paragraph 19E, HNA says that this claim is barred by the principle of *ex turpi causa oritur actio*, for the following reasons:

> "(e) *In the circumstances set out at paragraph 4A above, the Charterparty is tainted by bribery and would be unenforceable as against GCS, and/or any claim therefore made under it would be barred by the ex turpi causa doctrine. Accordingly, there is no enforceable liability under the Charterparty that might found any claim under the Guarantee.*
>
> (f) *Further or in the alternative, the Guarantee is itself tainted by the bribery which induced the Charterparty to which the Guarantee is so closely and directly related and is therefore unenforceable as against the Defendant, and/or any claim made under it is barred by the ex turpi causa doctrine.*
>
> (g) *Further or in the further alternative, the Claimant's claim is barred on the basis that the Claimant cannot obtain and/or enforce rights resulting from its own illegal act and/or on the principle that fraud unravels all.*"

## HNA's application for permission to amend

The basis of HNA's application

17. HNA's application for permission to amend is made under CPR r.17.1(2)(b), which permits a party to amend its statement of case with the permission of the Court.

18. I understand that in considering whether or not to grant permission to amend, the Court has a broad discretion but that that discretion should generally be exercised in favour of the applicant so that the real dispute between the parties can be adjudicated upon, so long as (i) the proposed amendments have real prospects of success, (ii) the amendments are not made too late, and (iii) any prejudice to the other party can be compensated in costs.

19. I verily believe that this is an appropriate case for the Court to grant permission to amend.

Real prospects of success

20. I believe that the defences advanced by way of amendment have (at least) real prospects of success. In particular:

(1) There is cogent evidence of the bribery in the form of the confessions made to the Haikou PSB by Jia Hongxiang and Jia Tingsheng, Sun Che, Xu Wenzhong, and Shen Wenfu[1]. Both Leading and Junior Counsel have satisfied themselves (as have I) that the evidence supports a plea of bribery.

(2) I believe that it is well established on the authorities (which can be developed so far as necessary by Counsel) that the proposed beneficiary under a guarantee is obliged to disclose to the guarantor any material unusual features of or surrounding the contractual relationship between the beneficiary and the principal obligor which are known or ought to have been known to the beneficiary. I believe that HNA has (at least) a real prospect of showing that the fact that the Charterparty was procured by bribery (assuming that that bribery is established) was an unusual feature that ought to have been disclosed to HNA, and that its non disclosure entitles HNA to rescind the Guarantee.

[1] I would also draw the Court's attention to the suspicious features surrounding the conclusion of the Charterparty at paragraph 24 of my first witness statement (albeit that I accept that those features alone would not justify a plea of bribery)

(3) I also believe that HNA has real prospects of its defence based on *ex turpi causa oritur actio*. As set out at paragraph 19E of the draft Amended Defence and Counterclaim, the bribes were contrary to Chinese and/or Hong Kong law, English public policy, and in any case amount to serious moral turpitude. In those circumstances, I believe that HNA has (at least) a real prospect of showing that the Charterparty and/or the Guarantee are unenforceable, with the result that the claim must fail.

The timing of the amendments

21. As I have explained, the letter from the Haikou PSB setting out the confessions by Jia Hongxiang and Jia Tingsheng, Sun Che, Xu Wenzhong, and Shen Wenfu was dated 17 February 2014. In the six weeks since that letter was sent, my firm and Counsel have had to consider the relevant evidence and the legal consequences of the bribery, advice has been sought from Chinese and Hong Kong lawyers (to support the allegations of illegality under those systems of law in paragraphs 19E(a) and (b) of the draft Amended Defence and Counterclaim), and the draft Amended Defence and Counterclaim has then had to be settled, commented on and approved. Given the sums at stake and the seriousness of the allegations, I believe that HNA has brought forward this pleading with all due expedition.

Prejudice to Shagang

22. I am not aware of any prejudice to Shagang that cannot be compensated in costs. In any case, in circumstances where the bribery was concealed by it from HNA and only discovered recently as a result of the Haikou PSB investigation I do not believe that it lies in Shagang's mouth to say that it has been prejudiced as a result of this case being advanced by way of amendment rather than as part of HNA's original Defence and Counterclaim.

Conclusion

23. For the reasons I have set out above, which will if necessary be amplified by Counsel in skeleton arguments, I would invite the Court to grant HNA permission to amend its Defence and Counterclaim in the form of the draft attached hereto.

24. I believe that the facts set out in this statement are true.

Signed: ______________________

Christopher James Grieveson

Dated: 8 April 2014

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

Claim No 2012 Folio 1208

The Hon Mr(s) Justice ______________

BETWEEN:

SHAGANG SHIPPING CO LTD

Claimant

and

HNA GROUP CO LTD

Defendant

[draft] ORDER

BEFORE The Honourable Mr(s) Justice sitting at the Commercial Court, The Rolls Building, 110 Fetter Lane, EC4A 1 NL on 2014

UPON the Defendant's application dated 8 April 2014

AND UPON reading the fourth witness statement of Christopher James Grieveson dated 8 April 2014

AND UPON HEARING [ for the Claimant and] Leading Counsel for the Defendant:

IT IS ORDERED THAT:

1. Pursuant to CPR r.17.1(2)(b), the Defendant do have permission to amend its Defence and Counterclaim in the form of the draft Amended Defence and Counterclaim exhibited to the fourth witness statement of Christopher James Grieveson.

2.    The costs of and occasioned by the amendments be the Claimant's in any event.

Order made on                                    2014

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

Claim No 2012 Folio 1208

BETWEEN:

SHAGANG SHIPPING CO LTD — Claimant

and

HNA GROUP CO LTD — Defendant

---

EXHIBIT 'CJG4'

---

Amended by [consent pursuant to CPR r.17.1(2)(a) on [date] / Order of Mr(s) Justice [insert] [illegible]

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>QUEEN'S BENCH DIVISION</u>
<u>COMMERCIAL COURT</u>

<u>Claim No 2012 Folio 1208</u>

BETWEEN:

SHAGANG SHIPPING CO LTD

<u>Claimant</u>

and

HNA GROUP CO LTD

<u>Defendant</u>

---

# AMENDED DEFENCE AND COUNTERCLAIM

---

1. In this Defence and Counterclaim:

   (a) The Defendant adopts the definitions, headings and abbreviations used in the Particulars of Claim without thereby making any admission;

   (b) Save where expressly stated to the contrary, references to paragraph numbers are to those of the Particulars of Claim.

## <u>DEFENCE</u>

### <u>The parties</u>

2. Save that no admissions are made as to the Claimant's trading address (its registered office being 6/F Heeny Tower, 9 Chatham Road South, Tsim Sha Tsui, Kowloon, Hong Kong), paragraph 1 is admitted.

3. Paragraph 2 is admitted.

## The Charterparty

4.  Paragraphs 3 and 4 are admitted.

[illegible]

[illegible] [illegible] [illegible] [illegible]

[illegible] [illegible] [illegible] [illegible]

## The Performance Guarantee

5. Paragraph 5 is admitted.

[illegible] [illegible] [illegible]

## Initial non-performance of the Charterparty

6. Paragraphs 6 to 8 are admitted.

7. As to paragraph 9:

(a) Paragraph 9(1) is admitted.

(b) As to paragraph 9(2):

i. It is admitted that the Claimant commenced arbitration proceedings against Charterers. The Defendant was not a party to that arbitration.

ii. Save that the 2nd Award was for US$2,314,773.18, the fact of the 1st and 2nd Awards as against Charterers are admitted.

iii. It is denied, if it be averred, that the Tribunal's 1st and 2nd Awards are admissible as against the Defendant, because:

(1) The Defendant was not party to that arbitration. As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

(2) Further, the 1st and 2nd Awards are confidential to the Claimant and Charterers and any attempt by the Claimant to rely on them as against third parties to the arbitration would be a breach of that arbitration confidentiality.

8. Save that it is denied that the Claimant attempted to put Charterers into liquidation (i.e. commence winding up proceedings), but admitted that the Claimant served a statutory demand on 11 March 2011, paragraph 10 is admitted. On 23 March 2011 the Charterers paid US$4,000,000 to the Claimant on account of the outstanding indebtedness. On 29 March 2011 the Claimant and Charterers executed a Settlement Agreement whereby the outstanding indebtedness was compromised on the terms more particularly set out therein.

9. Paragraph 11 is admitted.

Further non-performance of the Charterparty since March 2011

10. Paragraph 12 is admitted, save that on 13 December 2011 Charterers made a payment of US$1,000,000 towards the arrears of hire which fully covered the 24th instalment of hire and partly covered the 25th instalment of hire. The amount outstanding as at 11 January 2012 was therefore US$14,786,394.52. All of the sums due have since been paid pursuant to the terms of a Settlement Agreement made between the Claimant, Charterers, and the Defendant dated 17 May 2012.

11. As to paragraph 13:

(a) Save that the 3rd Award was for US$3,946,598.63, the fact of the 3rd to 5th Awards as against Charterers are admitted. The sums adjudged due in respect of hire have since been paid in full pursuant to the Settlement Agreement dated 17 May 2012.

(b) It is denied, if it be averred, that the Tribunal's 3rd to 5th Awards are admissible as against the Defendant, because:

i. The Defendant was not party to that arbitration. As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

ii. Further, the 3rd to 5th Awards are confidential to the Claimant and Charterers and any attempt by the Claimant to rely on them as against third parties to the arbitration would be a breach of that arbitration confidentiality.

12. As to paragraph 14:

(a) As to the contention that Charterers had failed to pay the 24th – 43rd instalments of hire, paragraph 10 above is repeated.

(b) Save that the notice was given outside business hours and therefore deemed served on 12 January 2012 ("the 12 January Notice"), the fact of the Claimant's three banking days' notice is admitted.

(c) It is denied that Charterers were in fact in repudiatory breach of the Charterparty. Charterers did not evince an intention not to be bound by the terms of the Charterparty. To the contrary they had made serious proposals at senior management level to pay monthly instalments of US$1,000,000 towards the arrears and any further hire that may fall due, commencing from December 2011 (which instalment had been paid on 13 December 2011) and a promise to pay cash sums of circa US$4 million prior to 1 February 2012. All of these payments would be in addition to the substantial sums that the Claimant would recover as liened sub-hire/freight.

13. As to paragraph 15:

(a) It is admitted that no sums were paid by Charterers or the Defendant between 12 and 17 January 2012 but, as set out above, Charterers had undertaken to pay circa US$4 million prior to 1 February 2012.

(b) Save that it is admitted that by its notice dated 17 January 2012 the Claimant purported to terminate the Charterparty, paragraph 15(1) is denied. Charterers had not evinced an intention not to be bound by the terms of the Charterparty and were not in repudiatory breach (continuing or otherwise) of the Charterparty.

(c) Save that it is admitted that by its notice dated 17 January 2012 the Claimant purported to withdraw the Vessel from the Charterparty service, paragraph 15(2) is denied. Three banking days after service of the 12 January Notice was 17 January 2012 and Charterers had until midnight on 17 January 2012 to pay the outstanding hire before the Claimant was entitled to withdraw the Vessel. The purported notice of withdrawal sent at 1508 local time on 17 January 2012 was accordingly premature. In any event, even if (which is denied) the Claimant was entitled to withdraw the Vessel from the Charterparty service, in such circumstances no damages are payable for loss of bargain.

14. Paragraph 16 is denied. Charterers were not in repudiatory breach of the Charterparty and the Claimant is not entitled to recover damages. If and insofar as the Claimant seeks to rely on the Tribunal's Partial Final Award ("the 6th Award") dated 1 November 2012 as evidence to the contrary, it is denied that the 6th Award is admissible in this action, because:

(a) The Defendant was not party to that arbitration. As a matter of principle, an arbitration award is not admissible as evidence of the findings contained therein as against third parties.

(b) Further, the 6th Award is confidential to the Claimant and Charterers and any attempt by the Claimant to rely on it as against third parties to the arbitration would be a breach of that arbitration confidentiality.

15. Without prejudice to paragraph 14 above, it is denied that the Claimant is entitled to the sum of US$66,356,281 as alleged:

(a) The market rate of US$17,500 is admitted. The alleged commission of 3.75% is not admitted and the Claimant is put to proof of the same.

(b) The Claimant is however required to give credit for accelerated receipt in circumstances where the Charterparty would have run to February 2017. The Defendant will say that the discount rate for accelerated receipt should be assessed by reference to the Claimant's Weighted Average Cost of Capital ("WACC"). Pending disclosure, the best particulars that the Defendant can give of the WACC is 13.62% - 22.64% per annum.

(c) Further, the Claimant is required to give credit for the possibility of catastrophic contingencies such as total loss, insolvency, etc. The Defendant will say that the discount rate for catastrophic contingencies should be 1.5% per annum, following The Kildare [2011] 1 Lloyd's Rep 360 at [73].

(d) The Claimant is finally required to give credit for the putative number of days during which the Vessel would have been off-hire. Pending exchange of expert reports, the best particulars that the Defendant can give is that it is likely to be estimated at 10 days' off-hire per annum, again following The Kildare, at [54].

(e) Further, if (which is denied) the 6th Award is relevant, it is to be noted that the Tribunal awarded the Claimant the sum of US$58,375,709.52, substantially less than the sum now claimed.

16. Save that no demand was made on 23 February 2011, but a demand was made on 16 February 2012 for a sum greater than that now claimed (even allowing for the fact that there was at that time outstanding hire which has since been paid), paragraph 17 is admitted.

Alleged non-performance of the Guarantee

17. Save that it is admitted that a demand was made on 16 February 2012 for a sum greater than that now claimed (even allowing for the fact that there was at that time outstanding hire which has

since been paid), paragraph 17 is denied. It is denied that Charterers were in repudiatory breach of the Charterparty. Consequently it is denied that the Defendant is in breach of or liable under the Guarantee as alleged or at all. Further and in any event it is denied that the sum of US$66,356,281 is the true measure of the Claimant's alleged loss.

18. Paragraph 19 is denied, there being no principal liability on which interest can run. Alternatively, interest can only run on past losses. As set out above, the majority of the Claimant's alleged losses are future losses for which credit must be given for accelerated receipt.

19. If contrary to the above the Defendant is liable to the Claimant in the sum claimed or any sum under the Guarantee, the Defendant is entitled to and will set off the sums counterclaimed below in reduction and/or extinction of any sums otherwise adjudged due to the Claimant.

[illegible] the Guarantee for fraudulent non-disclosure

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible] Accordingly, [illegible]

[illegible]

[illegible]

## COUNTERCLAIM

20. On 16 July 2011, the Claimant purported to commence arbitration proceedings ("the HNA Reference") against the Defendant under the Charterparty (not the Guarantee), on the basis that it had required the Defendant to "take over" from Charterers as charterer under the same. The Claimant appointed Timothy Marshall as its arbitrator under that reference. The Defendant appointed Simon Latham without prejudice to its contention that the tribunal had no jurisdiction over it as any claim arising out of the Guarantee, including in respect of the Defendant's obligations to "take over" the Charterparty, was subject to the jurisdiction of this Court.

21. In commencing the HNA Reference, the Claimant came under an implied obligation to honour

an award made against it by the tribunal in that reference.

22. By Award as to Jurisdiction dated 18 January 2012 ("the Jurisdiction Award"), the tribunal dismissed the Claimant's claim on the basis that it had no jurisdiction over the Defendant. The tribunal further ordered the Claimant to pay the Defendant's recoverable costs of the Jurisdiction Award on the standard basis.

23. By a further Final Award as to the Determination of the Amount of Recoverable Costs dated 15 July 2013 ("the Costs Award"), the tribunal awarded the Defendant its costs of the Jurisdiction Award in the sum of US$31,943.17 and further awarded the Defendant its costs of the Costs Award in the sum of US$1,837.60. The Tribunal also directed that in the event that the Defendant had paid for the costs of the Costs Award in the sum of £4,200, which it had, the Claimant should reimburse it that amount. All of the above sums were to attract interest at the rate of 4% per annum with three monthly rests.

24. Accordingly the Claimant is and was under an implied obligation to pay the Defendant the sum of US$33,780.77 being the Defendant's recoverable costs of the HNA Reference, the sum of £4,200 being reimbursement of the Defendant's payment of the costs of the Costs Award, and interest at the rate of 4% per annum with three monthly rests.

25. In breach of the implied obligation aforesaid, the Claimant has failed and/or refused to pay the said sum of US$33,780.77 and £4,200, or any of it. In the premises the Defendant is entitled to and does claim damages for breach of that implied obligation in the sum of US$33,780.77 and £4,200, alternatively such sum as the Court sees fit.

26. The Defendant is further entitled to and does claim interest at the rate of 4% per annum compounded at three monthly rests pursuant to the terms of the Costs Award, alternative at such rate as the Court sees fit pursuant to section 35A of the Senior Courts Act 1981.

[illegible]

AND the Defendant counterclaims:

(1) Damages in the sum of US$33,780.77 and £4,200, or such other sum that the Court may assess;

(2) Interest at the rate of 4% per annum compounded at three monthly rests pursuant to the Costs Award, alternative at such rate as the Court may see fit pursuant to section 35A of the Senior Courts Act 1981

**ALEXANDER WRIGHT**

PHILIP EDEY QC

ALEXANDER WRIGHT

**Statement of Truth**

The Defendant believes that the facts stated in this Defence and Counterclaim are true.

I am duly authorised to sign this statement on behalf of the Defendant.

Signed: [signature]

Full name: WU, Lie

Position held: General Manager of Audit & Legal Affairs Department, HNA Group

Date: 8 April 2014

FILED this day of November 2013 by Wikborg Rein LLP, Cheapside House, 138 Cheapside, London EC2V 6HS, Solicitors for the Defendant

Claim No 2012 Folio 1208

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

BETWEEN:

SHAGANG SHIPPING CO LTD

Claimant

and

HNA GROUP CO LTD

Defendant

AMENDED DEFENCE AND COUNTERCLAIM

Wikborg Rein LLP
Cheapside House
138 Cheapside
London EC2V 6HS

Tel: 020 7367 0300
Fax: 020 7367 0301

Solicitors for the Defendant

# 关于海航集团下属公司大新华轮船有限公司高管涉嫌刑事犯罪办理情况的复函

海航集团有限公司：

贵司来函要求我局依法告知大新华轮船有限公司高管涉嫌刑事犯罪案件办理的相关情况，根据《公安机关执法公开规定》第一章、第三章第十八条之规定，现答复如下：

2013年初，贵司向我局报案称：海航集团下属大新华轮船有限公司【Grand China Shipping (Hong Kong) Company Limited，简称：大新华轮船】高管杨涛、陈玉霞等人涉嫌严重经济犯罪。我局立案侦办杨涛、陈玉霞等人涉嫌非国家工作人员受贿案，经查发现该司原董事长贾鸿祥及其子贾庭昇涉嫌严重刑事犯罪的事实。

2013年10月，我局对贾鸿祥、贾庭昇的犯罪行为依法立案侦查并对其采取了刑事强制措施，其到案后均对其犯罪事实供认不讳。贾庭昇还供认称：2008年7、8月，在大新华轮船和沙钢船务有限公司(shagang shipping co ltd，以下简称：沙钢船务)关于"DONG-A ASTREA"轮签订长期租船合同一事中，收受沙钢船务原副总经理、该业务经办人许文中向其行贿的30万元人民币，并按对方要求做其父贾鸿祥的工作，使其同意该轮的租赁事宜。此后，贾鸿祥同意并审批了此单租船合同。

2013年12月，我局以许文中涉嫌对非国家工作人员行贿罪立案侦查并对其采取刑事强制措施，许文中向贾庭昇行

贿 30 万元的犯罪事实也供认不讳，还供认是受沙钢船务原董事、总经理沈文富指使向贾庭异行贿的。

2014 年 1 月 13 日，大新华轮船原总经理孙澈因涉嫌其他刑事犯罪被我局采取刑事强制措施。孙澈还供认：在大新华轮船和沙钢船务关于“DONG-A ASTREA”轮租赁一事中，收受了该笔业务经纪人洪祥彬行贿的 3 万美元，并利用职务之便为对方牟利的犯罪事实。

2014 年 2 月 15 日，沙钢船务原董事、总经理沈文富被我局立案侦查并采取了刑事强制措施，沈文富也如实供述了其让许文中向贾庭异、贾鸿祥行贿 30 万元，还让经纪人洪祥彬行贿孙澈的犯罪事实，目的是为了顺利签订上述“DONG-A ASTREA”轮租赁合同。

综上所述，贵司与沙钢船务关于“DONG-A ASTREA”轮租赁一事中，上述经办人存在违法犯罪行为。至此，我局已对大新华轮船窝案的 12 名犯罪嫌疑人分别立案侦查并采取了刑事强制措施。现该案正在侦办中。

海口市公安局美兰分局
二〇一四年二月十七日

# By Haikou Public Security Bureau Meilan Sub-bureau

**Reply regarding the investigation of suspected crimes conducted by senior officers of Grand China Shipping (Hong Kong) Limited, a subsidiary of HNA Group Company Limited**

To HNA Group Company Limited,

As to you apply for getting informed of the investigation of crimes suspected to be conducted by senior officers of Grand China Shipping (Hong Kong) Company Limited (hereinafter referred to as GCS), according to Chapter One and Article 18 of Chapter Three of the Disclosure Rules of Public Security Organ in Law Enforcement Activities, we reply hereinafter:

In the beginning of 2013, you report to us that senior officers, such as Yang Tao and Chen Yuxia, of GCS, a subsidiary of you, involved in serious economic crimes. We then filed a case regarding Yang Tao and Chen Yuxia and others' suspected offence of taking bribes as non-state staff, and by investigation, we found that Jia Hongxiang, the former chairman of GCS and his son Jia Tingshen are also suspected to be involved in serious crimes.

In October, 2013, we filed a case regarding Jia Hongxiang and Jia Tingshen's suspected offences and took criminal coercive measures accordingly. They confessed. And Jia Tingshen confessed that: in July and August, 2008, during the negotiation of M.V. DONG-Astrea charter party between GCS and Shagang Shipping Company Limited (hereinafter referred to as "SHAGANG SHIPPING"), took bribes in amount of 300,000 RMB from Xu Wenzhong, who was then the Deputy General Manger of and person in charge of this deal of SHAGANG SHIPPING, and persuaded his father Jia Hongxiang into approving this deal according to Xu Wenzhong's request. At last, Jia Hongxiang approved this deal.

In December 2013, our Bureau opened file for Xu Wenzhong and took criminal enforcement measures against him on grounds of suspected crime of offering Bribery to non-state staff, and meanwhile he admitted the fact he had bribed Jia Tingsheng with RMB300,000, and claimed that he did so because he was instructed by the former director and general manager Shen Wenfu.

On 13th January 2014, the former general manager Sun Che of GCS was held in custody by our Bureau due to his involvement in other criminal offence. Regarding Charter Party of MV "DONG-A ASTREA" between Grand China Shipping and Shagang Shipping, Sun Che has also confessed that he had accepted bribes offered by the broker Hong Xiangbin in the amount of 30,000USD, and he made profit for the counter party using his position in the company.

On 15th February 2014, Shen Wenfu the former director and general manager of SHAGANG SHIPPING was filed and placed criminal enforcement measures, and Shen Wenfu confessed that

he had Xu Wenzhong to bribe Jia Lisheng and Jia Hongxiang with RMB300,000, and the fact he had asked the broker Hong Xiangbin to bribe Sun Che, in order to successfully conclude the Charter Party of MV "DONG-A ASTREA".

To sum up, on the subject of Charter Party of MV "DONG-A ASTREA" between your company and SHAGANG SHIPPING, the aforementioned persons have committed relevant crimes. Now we have respectively opened official files for and taken criminal enforcement measures against 12 suspects accordingly. The related investigation is now in process.

By Haikou Public Security Bureau Meilan Sub-bureau

17th, Feb, 2014